GENE EARL JONES, Plaintiff-Appellant, v. BURKART FOAM, INC., *et al.*, Defendants-Appellees.

Fifth District    No. 5—91—0586

Opinion filed July 17, 1992.

John D. Alleman, of R. Courtney Hughes & Associates, of Carbondale, for appellant.

W.C. Spomer, of Cairo, and Frank J. Saibert and Timothy A. Wolfe, both of Katten, Muchin & Zavis, of Chicago, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

This action was brought by the plaintiff, Gene Earl Jones, to recover damages for the alleged wrongful discharge from his employment by the defendants, Burkart Foam, Inc. (count I), and personnel manager Don Hook (count II). The trial court granted defendants' motions for summary judgment from which plaintiff appeals. We reverse and remand.

Plaintiff began working for Burkart Foam, Inc., in September 1984. Plaintiff took several medical leaves of absence due to complications resulting from diabetes during his employment with Burkart. On April 10, 1989, plaintiff injured his right hand at work while operating a machine known as a laminator. After an initial examination and several follow-up examinations, plaintiff was eventually excused from all work by his physician, Dr. Lents. On or about May 26, 1989, plaintiff filed a workers' compensation claim for the April 10 injury.

On August 14, 1989, Burkart personnel manager Don Hook received a return-to-work form from Dr. Lents' office allowing the plaintiff to return to light-duty work. Hook put the plaintiff back on the seniority list and changed his status from "medical leave" to "active as a light-duty classification" effective August 14, 1989. Plaintiff claimed, however, that he did not receive any notice from Dr. Lents and that, in fact, such a release was an error. Plaintiff did not return to work on August 14, 15 or 16, 1989. On August 17, 1989, Burkart Foam terminated plaintiff based on the three-day, no-show policy contained in its collective bargaining agreement with employees.

After receiving Burkart's termination letter at home, plaintiff's wife called Hook and told him that plaintiff had never received Dr. Lents' notice releasing him for work. On August 23, 1989, plaintiff met with Hook, who agreed to disregard the termination notice and offered to reinstate the plaintiff immediately. Plaintiff refused to return to work that day, and Hook presented him with an agreement to return to work on August 28, 1989, which plaintiff signed. Plaintiff

contends that he understood the agreement to be effective only if Dr. Lents released him for light duty. Plaintiff did not return to work on August 28, 29, or 30, 1989. Pursuant to the three-day, no-show policy, a second termination notice to the plaintiff was issued on August 31, 1989.

On September 1, 1989, plaintiff again met with Hook and presented a note from Dr. Lents dated August 25, 1989, excusing plaintiff from work until September 9, 1989, the date of plaintiff's next appointment. Defendants refused to reinstate plaintiff.

On December 4, 1989, plaintiff filed this action against Burkart Foam alleging that the company had discharged him in retaliation for his pursuit of his workers' compensation claim. On May 23, 1990, plaintiff amended his complaint to allege the same cause of action against Don Hook. On November 1, 1990, defendants filed motions for summary judgment. The trial court granted the motions on July 31, 1991, and stated that plaintiff had "failed to set forth sufficient facts from which an inference of retaliatory discharge could be drawn" on either count.

A summary judgment

> "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).

■■ Plaintiff argues that materials presented to the trial court raised a question of material fact as to defendants' motive. In an action for retaliatory discharge, the issue of motive or intent is a question of material fact and one which is not normally subject to summary judgment. *Palmateer v. International Harvester Co.* (1986), 140 Ill. App. 3d 857, 860, 489 N.E.2d 474, 476.

The center around which the majority of this dispute seems to revolve is the apparent inconsistency between the handling of the two discharges. Plaintiff contends that such a dissimilar treatment under such similar circumstances suggests that defendants' motive in the second discharge was a retaliation for the filing of the workers' compensation claim and was unrelated to his absences. Defendants have two responses. First, they argue that the situations were not similar. Second, defendants contend that they did their best to return plaintiff to work and only terminated him after the second violation. In addition, defendants argue that their refusal to rehire plaintiff is irrelevant as this is an action for retaliatory discharge and not a retaliatory refusal-to-rehire case.

The record establishes that plaintiff's original discharge was rescinded once plaintiff convinced Don Hook that he had never been made aware of the doctor's change in his work status. There is, unfortunately, some confusion as to the understanding of the agreement to return to work on August 28, 1989. The fact that plaintiff apparently saw Dr. Lents on August 25, 1989, where he received a release from all work until September 9, 1989, gives some credibility to plaintiff's alleged interpretation of the agreement, *i.e.*, that he believed he was to return only if cleared by Dr. Lents. Defendants counter that this is irrelevant since they were not made aware of this release. Defendants point out that although plaintiff had full knowledge of both the release and the company's three-day absence policy, he failed to inform them of the release prior to his second discharge. However, the fact that defendants refused to rehire plaintiff, even when shown that plaintiff was actually not released to work on the days in question, places the defendants' professed motive for discharge in some doubt. Termination seems a rather harsh punishment for an employee's mere failure to inform the employer of his continued unavailability to work until only a few days beyond a disputed deadline. Such a drastic measure for a minor infraction could suggest an inference that defendants had a motive different than that which they professed. *Hugo v. Tomaszewski* (1987), 155 Ill. App. 3d 906, 508 N.E.2d 1139.

Defendants reply that their refusal to rehire is of no significance and should not be considered since this is an action for a retaliatory discharge and not a retaliatory refusal to rehire. What defendants fail to grasp is that their refusal to rehire, even when confronted with evidence demonstrating plaintiff had not been released to work on the days in question, casts a shadow as to the purity of their motive. Contrary to defendants' argument, the mere fact that plaintiff was rehired after the first discharge does not somehow purge future terminations of any possible illicit motives, including retaliatory discharge.

For this same reasoning, we cannot agree with defendants that the evidence proves Burkart had a valid nonpretextual reason to fire plaintiff. Defendants correctly argue that the requisite causality for a retaliatory discharge will not exist if the basis for discharge is valid and nonpretextual. (*Slover v. Brown* (1986), 140 Ill. App. 3d 618, 621, 488 N.E.2d 1103, 1105.) While defendants' stated motive for discharge was valid on its face, it must also be nonpretextual. There is no dispute that defendants were aware that plaintiff had filed his workers' compensation claim only three months earlier, and it is also undisputed that defendants became aware of plaintiff's continued work release by September 1, 1989. Defendants' refusal to rescind

plaintiff's termination suggests that defendants' purported motive for the second discharge may have been, in fact, a pretext for a retaliatory discharge.

Whether or not the facts presented establish plaintiff's case is not for us to say. We are not endorsing the worthiness of plaintiff's claim but only acknowledging that there is at least a genuine issue as to a material fact, defendants' motive in the second discharge. Where fairminded people could draw different inferences from the facts presented, the issue should be submitted to the trier of fact. *Hugo v. Tomaszewski* (1987), 155 Ill. App. 3d 906, 910, 508 N.E.2d 1139, 1142.

We, therefore, reverse the order granting summary judgment and remand for further proceedings.

Both parties have urged this court to rule on the validity of count II against Don Hook, plaintiff's supervisor, who committed the alleged retaliatory discharge. However, the trial court's order of July 31, 1991, did not address count II's validity as a cause of action but dismissed it for plaintiff's failure to establish sufficient facts to withstand the summary judgment motions. Since the trial court has not ruled on the legal sufficiency of count II, we decline to rule on it at this time.

Reversed and remanded.

GOLDENHERSH, P.J., and WELCH, J., concur.